IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Baxter Felix Vinson, Jr., ) | C/A NO. 0:10-847-CMC-PJG |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| Sharonda Sutton, Alan Walls, MD, Larry ) Cartledge, Karen McCullough, Marie ) Sherman, Robert Poiletman, MD, ) | |
| Defendants. ) | |

This matter is before the court on Plaintiff's complaint, filed in this court pursuant to 42 U.S.C. § 1983. Defendants filed motions for summary judgment, to which Plaintiff responded in opposition.[1]

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(d), DSC, this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On January 18, 2013, the Magistrate Judge issued a Report recommending that Defendants' motions for summary judgment be granted in part and denied in part, and that this matter proceed to trial against Defendants Karen McCullough, Marie Sherman, and Alan Walls, M.D., on Plaintiff's Eighth Amendment claims. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed has objections to the Report, as did Defendants Walls, McCullough and Sherman. Plaintiff filed a response to Defendants' objections, to which

---

[1]Plaintiff has consented to the dismissal of Defendant Larry Cartledge. ECF No. 130 at 1.

1

Defendants replied.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After conducting a *de novo* review of the record relating to the parties' objections and after considering the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and all objections, the court agrees with the conclusions of the Magistrate Judge. Accordingly, the court adopts and incorporates the Report and Recommendation by reference in this Order with the following caveats.

The record contains a "Min Narrative" indicating that at on March 7, 2008, at approximately 9:01 p.m., Plaintiff had cut his forearms and had "cut open his abdomen pulling out a small part of his intest[ine]," ECF No. 130-23 (filed July 12, 2012). However, Plaintiff's own testimony is that this abdominal wound did not occur until approximately 10:30 p.m., <u>after</u> he was placed in the SMU holding cell. See Deposition of Baxter Vinson at 185, 186, 188, 190, and 194 (placed in holding cell "[a]bout ten p.m."; spit out the razor into his lap "[f]ifteen minutes" later; then cut his stomach for the "first time"; he made vertical cut "right up the middle of my abdomen"; "my intestines came out of the incision and swoll [sic] up like a grapefruit"; and "my intestines were hanging out of my stomach by about 10:30 [p.m.]."). Accordingly, the time frame of the alleged medical emergency

2

began at 10:30 p.m., not an hour and a half earlier. This is confirmed by the affidavit of former Correctional Officer Alex James, who attests that Plaintiff cut his abdomen in front of James, "after being placed in the holding cell." Aff. of Alex James at ¶ 7 (ECF No. 130-4).

To be deliberately indifferent to a serious medical need, "the official must both be aware of facts from which the inference could be drawn that a substantial risk [to inmate health or safety] exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).[2] "[I]t is enough [to establish liability] that the official acted or failed to act despite his knowledge of a substantial risk [to inmate health or safety]." *Id*. at 842. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk [to inmate health or safety] from the very fact that the risk was obvious." *Id*.

This court agrees with the Magistrate Judge that Plaintiff has presented evidence from which a reasonable jury could find that Defendants Walls, McCullough, and Sherman were aware that Plaintiff had cut his abdomen and was holding a razor blade in place in his abdominal wall. There is a dispute concerning whether these defendants were also aware that Plaintiff's intestine was bulging out of his abdomen prior to his being placed in the restraint chair. In fact, there are inconsistencies in the testimony of these Defendants as to what was noted by the nurses and when,

---

[2]In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court defined "deliberate indifference" and set forth the framework for analysis of claims of deliberate indifference. First, to violate the Constitution, an alleged deprivation must be "objectively, sufficiently serious." *Id*. at 834. It is not disputed that a bowel evisceration is an objectively, sufficiently serious injury to Plaintiff. Second, an official must have "a sufficiently culpable state of mind. " *Id*. (internal quotations omitted). The requisite state of mind is "deliberate indifference." *See id*.

3

and what was reported to Dr. Walls and when.

In the light most favorable to Plaintiff, a reasonable jury could find that Defendants Walls, McCullough, and Sherman were aware, prior to Dr. Walls' order to place Plaintiff in the restraint chair, that Plaintiff had cut his abdomen with a razor blade and that, at the least, he had an open abdominal wound and, at worst, an obvious eviscerated bowel.[3] Either is sufficient to establish, in the light most favorable to Plaintiff, knowledge of a substantial risk to inmate health or safety. Certainly then, placing Plaintiff in a restraint chair "for behavior problems for a max[imum] of 8 [hours],"[4] Medical Encounter 1299 (ECF No. 122-2 at 5, filed June 18, 2012), could be found by a reasonable jury to be action or failure to act despite knowledge of such a risk.

The Report concludes that a reasonable jury could find that Defendants Walls, McCullough, and Sherman "violated Vinson's Eighth Amendment rights." Report at 11 (ECF No. 138, filed Jan. 18, 2013). While there is evidence in the record, in the light most favorable to the Plaintiff, from which a reasonable jury could find that these Defendants were deliberately indifferent to the serious medical needs of Plaintiff., the court finds that is the sole remaining issue for trial. Dr. Walls' order to put Plaintiff in the restraint chair for up to eight (8) hours for behavioral issues (again, in the light most favorable to Plaintiff) goes to Walls' state of mind to establish a deliberate indifference claim, not an excessive force claim. While Dr. Walls ordered that Plaintiff be placed in the restraint chair,

---

[3] It is not clear what these Defendants knew about the location of the razor blade at the time Plaintiff was placed in the restraint chair.

[4] Defendant McCullough testified in her deposition that Dr. Walls ordered that Plaintiff be placed in the restraint chair "for behavioral problem[s]" for "[a] maximum of eight hours." Depo. of Karen McCullough at 80 (ECF No. 122-5 at 21, filed June 18, 2012). The "Use of Restraint Chair and Observation Log," dated March 7, 2008, notes the reason for use of the restraint chair as "I/M Vinson self inflicted (2) laceration on [left and right] arm and open wound in his abdomen area." ECF No. 130-20 (filed July 12, 2012).

the only individuals who applied *force* in this circumstance were the correctional officers who removed Plaintiff from the holding cell, seated him in the restraint chair, and secured the four-point restraints. These individuals are not defendants here. *See*, *e.g.*, *Wilkins v. Gaddy*, 559 U.S. 34, __, 130 S. Ct. 1175, 1178 (2010) (core inquiry in excessive force case is "whether *force was applied* in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." (quotations and citation omitted) (emphasis added).[5]

Accordingly, for the reasons noted above, and the reasons cited by the Magistrate Judge in the Report, the court **grants in part and denies in part** Defendants' motions for summary judgment. Defendants Cartledge, Sutton, and Poiletman are **granted** summary judgment and are dismissed from this matter with prejudice. Defendants Walls, McCullough, and Sherman are **denied** summary judgment and this matter shall proceed to trial on the issue of whether these Defendants were deliberately indifferent to Plaintiff's serious medical needs during the term of court beginning May 30, 2013.

**IT IS SO ORDERED.**

                                                    s/ Cameron McGowan Currie
                                                    CAMERON MCGOWAN CURRIE
                                                    UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 13, 2013

---

[5]The videotape of the cell extraction and subsequent examination by Nurse McCullough reveals that while McCullough indeed attempted to leverage Plaintiff's intestine back into his abdomen, it simply cannot be said her actions were sadistic and malicious "for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

5